IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EVELYN THOMAS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 06-5372 |
| | : | |
| **COMMUNITY COLLEGE OF PHILADELPHIA** | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                                   **April   18   , 2008**

Plaintiff Evelyn Thomas ("Plaintiff") brings this action against Community College of Philadelphia ("CCP" or "Defendant") alleging a violation of the Equal Pay Act, 29 U.S.C. §§ 206(d), et seq. ("Equal Pay Act" or "EPA").  Now before the Court is Defendant's Motion for Summary Judgment ("Motion").  For the reasons that follow, the Motion will be granted.

**I. BACKGROUND**

In July 1999, Plaintiff began working for Defendant as a "Housekeeper" with the Facilities Department.  See Defendant's Statement of Undisputed Facts ("Def's Statement") at ¶ 1.[1]  The job was a "Grade II" position.  See id.  At the time, she made $6.90 per hour.  Due to yearly increases in her salary, Plaintiff was making $8.07 per hour as a Housekeeper by July 2003.  Id. at ¶ 2.

In October 2002, Defendant created a new position in the Facilities Department called "Housekeeper A," which was a "Grade IV" position.  Id. at ¶ 3.  At that time, the salary range for Grade IV positions was $9.07 per hour (or $17,692 per year minimum) to $16.56 per hour (or $32,300 per year minimum).  See Motion at Exhibit 1-A, Exhibit "A."  Defendant hired two

---

[1]       Unless otherwise noted, all citations to Defendant's Statement of Undisputed Facts refer to facts that have been admitted by Plaintiff.

1

males from outside CCP, Sidney Craddock ("Craddock") and Keith Warner ("Warner"), to fill Housekeeper A positions on November 18, 2002 and December 2, 2002, respectively. Def's Statement at ¶ 4. Defendant set the initial pay rates for Craddock and Warner at $9.07 per hour, the minimum pay rate for the position. See Affidavit of Harry Moore at 3, attached to Motion at Exhibit 1.

Both Craddock and Warner interviewed with Ed Nolan ("Nolan"), Manager of Environmental Services, prior to obtaining their positions. Id. at ¶ 5. The parties dispute what was said regarding salaries during these interviews. Defendant claims that, based upon their prior experience, Craddock and Warner requested more than the minimum pay rate for the Housekeeper A position. Id. Defendant also contends that they started work with the understanding that they would be paid above the minimum pay rate. Id. at ¶ 6. Plaintiff contends that there is no evidence that either Craddock or Warner requested more than the minimum pay rate. See Plaintiff's Response to Def's Statement at ¶ 5. She further argues that while Nolan told them that he could probably get each more money, there is no evidence that he made promises or guarantees to either. See id. at ¶¶ 6-7.

Approximately nine months after Craddock and Warner started working for Defendant, their union representative arranged for them to meet with Harry Moore ("Moore"), Director of the Facilities Department.[2] They told him they believed there was a mistake in their pay rates because they had been told by Nolan that they would make "something like $11.00 per hour." See id. at ¶ 7. On September 9, 2003, Moore wrote a memorandum to Thomas Hawk, Vice President for Planning and Finance, which stated that Craddock and Warner told him that prior to

---

[2] Nolan testified at his deposition that Craddock and Warner brought the mistake in their salaries to his attention approximately four to five months after they started, but that he did not look into the situation at that time because he "got sidetracked." See Motion at Exhibit 3, pp. 18-19.

being hired, Nolan promised that they would make more than the minimum pay rate of $9.07 per hour.  See id. at ¶ 8; Motion at Exhibit 1-B.  He requested that their pay rates be adjusted to $11.00 per hour.  See Def's Statement at ¶ 8; Motion at Exhibit 1-B.  On September 12, 2003, Hawk wrote a memorandum to Jack Muraskin, Chief Human Resources Officer, explaining the mistake and stating that Craddock and Warner's pay rates were incorrect "given their supervisor responsibilities and the complexity of their job duties, as well as their experience."  See Motion at Exhibit 1-B.  Subsequently, on September 22, 2003, Defendant adjusted the pay rates for Craddock and Warner to $11.00 per hour, retroactive to their start dates.  See Def's Statement at ¶ 9.  The personnel forms effecting the pay rate changes state that "a mistake was made with starting salary when hired."  Id.

In July 2003, Defendant promoted Plaintiff to the Housekeeper A position.  See id. at ¶ 10.  Her hourly wage increased from $8.07 per hour to $9.07 per hour, the minimum hourly rate for a Grade IV position.  See id. at ¶ 11.  At the time of Plaintiff's promotion, the Collective Bargaining Agreement in place stated:

> In the case of a move upward in Labor Grade, the hourly rate then will be the higher of the minimum rate of the posted job or an adjustment to the hourly rate which is ... nine (9%) percent for two (2) grades ... in excess of his/her then current rate.

See Motion at Exhibit 1-A, Article IX at ¶ 4(e).  Plaintiff's new salary met this requirement.  See Def's Statement at ¶ 13.

In February 2006, Defendant hired John Adams for a Housekeeper A position at the same rate as Plaintiff.  See id. at ¶ 15; Motion at Exhibit 1-F.  In April 2007, Defendant hired Richard Chamberlain for another Housekeeper A position, also at the same rate as Plaintiff.  See Def's Statement at ¶ 15; Motion at Exhibit 1-G.  One other male employee, Carl Thomas, was promoted, like Plaintiff, from a "Grade II" Housekeeper position to a "Grade IV" Housekeeper A

position in October 2006, and he received the same pay as Plaintiff. See Def's Statement at ¶ 16; Motion at Exhibit 1-I. Plaintiff filed this action in December 2006.

## II. LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial." Id.

## III. ANALYSIS

The Equal Pay Act prohibits discrimination on the basis of sex between employees with respect to compensation for the same or substantially the same work, except when the differential is the result of "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings

by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d). Analysis of a claim brought pursuant to the EPA follows a two-step burden-shifting analysis. See Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000). First, the plaintiff must establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing equal work, i.e., "work of substantially equal skill, effort and responsibility, under similar working conditions." Id. Once the plaintiff has set forth a prima facie case, the burden of *persuasion* shifts to the employer to demonstrate the applicability of one of the four affirmative defenses referenced in § 206(d). See id.

The Third Circuit has held that the employer's burden of persuasion in an EPA case "differs significantly" from the burden an employer bears in other types of discrimination cases. Id. In order to defeat an EPA claim at the summary judgment stage, an employer must "prove at least one affirmative defense 'so clearly that no rational jury could find to the contrary.'" Id. (quoting EEOC v. Del. Dep't of Heath & Soc. Servs., 865 F.2d 1408, 1414 (3d Cir. 1989)). The Third Circuit has interpreted this requirement to mean that an employer must "submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." Id. at 108 (emphasis in original).[3] Thus, at the summary judgment stage, an employer "must produce sufficient evidence such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains." Id. In this case, Defendant does not dispute that Plaintiff has established a prima facie case. See Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def's Mem.")

---

[3] In contrast, an employer in an ADEA or Title VII case need not prove that the proffered nondiscriminatory reason behind different salaries *actually* motivated the salary decision. See id. (citation omitted).

at 15.  Therefore, the question before the Court is whether Defendant has met its burden with respect to proving one of the four affirmative defenses in the EPA.

Defendant argues that it has set forth undisputed evidence that the discrepancy in pay between Plaintiff and Craddock and Warner was based on a factor other than sex.  See id. at 15.  Specifically, Defendant argues that two factors other than sex explain the disparity: (1) Craddock and Warner were newly hired employees who sought higher salaries based on their prior experience, and (2) Plaintiff's salary was determined properly pursuant to the Collective Bargaining Agreement.  See id. at 15-16.  Plaintiff responds that Defendant has not shown by undisputed facts that a factor other than sex resulted in the pay discrepancy, but rather has set forth interpretations of events that go beyond the undisputed facts.

It is undisputed that Craddock and Warner's pay rates were set at $9.07 per hour, the minimum rate for the position, when they initially were hired, the same rate that Plaintiff was paid when she was promoted to the Housekeeper A position.  It is also undisputed that three other males who were either hired from the outside or promoted to the Housekeeper A position initially were paid the minimum rate for the position.  Finally, it is undisputed that Craddock and Warner continued to be paid at the minimum rate until *they* complained that they had been promised a higher salary when they were hired and, after an unsuccessful attempt to resolve the matter with Nolan, involved their union in the issue.[4]  At the meeting with Craddock, Warner, and the union representative, Moore learned that they had been promised a higher salary based on prior housekeeping experience.  After the meeting, he spoke with Nolan, who confirmed that his

---

[4] Although she told other employees at the company that she was aware Craddock and Warner had received a pay increase, Plaintiff testified at her deposition that she never spoke to Nolan, Moore, or union representative Eric Massenberg directly about the issue, nor did she ever ask for a salary increase for herself.  See Plaintiff's Response at Exhibit A, pp.149, 150.  She also never asked the union to file a grievance on her behalf regarding her pay rate.  See id. at 166.

6

intention and understanding had been that they were hired at a higher pay rate because of their experience.  Only then did Craddock and Warner receive the $11.00 per hour pay rate.[5]  See Motion at Exhibit 1-B.

Importantly, the meeting between Moore, Craddock, Warner, and the union representative that ultimately resulted in the pay adjustment was arranged at the request of the union representative, *not* at Defendant's initiative.  See id.  Moreover, contemporaneous documents prepared in September 2003 support Defendant's contention that Craddock and Warner's pay rates were adjusted only after they complained and Defendant realized that there had been a mistake in setting their initial pay.  See Motion at Exhibit 1-B (memorandum from Moore noting that "while [he and Nolan did] not know how the error was made, we are both certain that an error did happen"); id. (memorandum from Muraskin stating that Craddock and Warner's pay rates were set at an "incorrect amount" given "their supervisor responsibilities and the complexity of their job duties, *as well as their experience*" (emphasis added)); Motion at Exhibit 1-C and 1-D (personnel forms implementing the pay rate changes which state that "A mistake was made with starting salary when hired").  Based on the evidence before the Court, "no

---

[5]  As explained in the memorandum prepared by Moore on September 9, 2003, the $9.07 per hour rate at which Craddock and Warner initially were paid was "consistent with Facilities Department hiring practices" for employees newly hired from the outside.  Motion at Exhibit 1-B; see also Motion at Exhibit 1 ("In general, when someone is being newly hired from outside CCP for a position in the Facilities Department, he or she is offered the minimum pay rate for that position.").  However, if a person hired from the outside "has relevant experience or other important skills, a decision may be made to pay the individual more than the minimum."  See Motion at Exhibit 1.  Plaintiff's pay rate when she moved to the Housekeeper A position was set in accordance with the Collective Bargaining Agreement since she was promoted from within and there was no discretion for Defendant to set her initial pay rate higher.  See Motion at Exhibit 1 ("In the case of a person who is promoted from within the ranks of existing CCP employees, his or her increased rate of pay is determined by a formula in the Collective Bargaining Agreement, which dictates the percentage increase such an employee receives.  There is no discretion in that situation.").  Plaintiff has offered no evidence to counter Defendant's assertion that it had no discretion under the Collective Bargaining Agreement to pay her more than $9.07 per hour when she was promoted.

rational jury could conclude but that" Craddock and Warner's pay rates were adjusted only after they complained that they had been promised a higher salary based on their prior experience when they were hired. Accordingly, Defendant has carried its heavy burden of establishing that the pay differential was based on a factor other than sex, and summary judgment is appropriate.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment will be granted. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EVELYN THOMAS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 06-5372 |
| | : | |
| **COMMUNITY COLLEGE OF PHILADELPHIA** | : | |
| | : | |

### ORDER

**AND NOW**, this             day of April, 2008, upon consideration of Defendant's Motion for Summary Judgment (docket no. 14), Plaintiff's Response thereto (docket no. 17), and Defendant's Reply (docket no. 18), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED**.   Accordingly, the Clerk of the Court shall mark this case **CLOSED** and **JUDGMENT IS ENTERED** in favor of Defendant.

BY THE COURT:

  S/ BRUCE W. KAUFFMAN
BRUCE W. KAUFFMAN,  J.

9